UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────

ERIN NAGEL,

                                    Plaintiff,                    09-CV-9960 (CS)

          - against -                                            **OPINION**
                                                                 **AND ORDER**
COUNTY OF ORANGE,

                                    Defendant.

─────────────────────────────────

Appearances:

Michael Sussman
Sussman & Watkins
Goshen, New York
*Counsel for Plaintiff*

Hyun Chin Kim
Senior Assistant Orange County Attorney
Goshen, New York
*Counsel for Defendant*

Seibel, J.

     Before the Court is the motion of Defendant County of Orange for summary judgment

dismissing the Amended Complaint ("Am. Compl.") of Plaintiff Erin Nagel for retaliation under

the Family & Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA"). (Doc. 31.) For

the reasons stated below, Defendant's motion is GRANTED.

     **I.       BACKGROUND**

     The following facts are set forth based upon the parties' Local Civil Rule 56.1 statements

and supporting materials, and are undisputed except as noted below.

In September 2003, Plaintiff took an open competitive examination for the position of clerk trainee in the Department of Motor Vehicles ("DMV").  (P's Counter 56.1 ¶ 1; D's 56.1 ¶ 1.)[1]  In May 2004, Plaintiff took a full-time position in the DMV.  (P's Counter 56.1 ¶ 2; D's 56.1 ¶ 2.)  On April 29, 2006, Plaintiff took a civil service examination for the open principal clerk position in the Department of Personnel.  (P's Counter 56.1 ¶ 4; D's 56.1 ¶ 4; McCarey Aff. Ex. F.)[2]  This position had a published notice, which stated the date of the examination and that the examination was open to the public.  (McCarey Aff. Ex. F.)  In December 2007, at the request of the County, Plaintiff resigned from the DMV position to accept the principal clerk position with the Orange County Department of Personnel (the "Department").  (P's Counter 56.1 ¶¶ 3-4; D's 56.1 ¶ 3.)  She started work at the Department as a probationary employee on January 2, 2008.  (P's Counter 56.1 ¶ 8, 10; D's 56.1 ¶¶ 8, 10.)

On November 12, 2008, Plaintiff was hospitalized due to a medical condition.  (P's Counter 56.1 ¶ 13; D's 56.1 ¶ 13.)  Plaintiff alleges that she requested leave time by calling Donna McCarey, Director of Personnel Management.  (P's Couner 56.1 ¶ 13.)  Over the course of the next week, Plaintiff alleges that she told McCarey that she would be out on leave for some time due to her medical condition and her pregnancy.  (P's Counter 56.1 ¶¶ 13-14.)  On or around November 19, Plaintiff alleges that she spoke with McCarey again and told her that she would not be able to return to work until after she gave birth, which was due to occur in mid-January.  (P.'s Counter 56.1 ¶ 12; D's 56.1 ¶¶ 13-14.)  Plaintiff contends that she told McCarey

---

[1] "P's Counter 56.1" refers to Plaintiff's Rule 56(1)(a) Statement  (Doc. 43.)  "D's 56.1" refers to Defendant's Rule 56(1)(a) Statement.  (Doc. 36.)

[2] "McCarey Aff." refers to the August 2, 2012 Affidavit of Donna McCarey in Support of Defendant's Motion for Summary Judgment.  (Doc. 34.)

that her FMLA leave would be depleted shortly after she expected to give birth, and that she

needed more leave time.  (P.'s Counter 56.1 ¶ 13.)  Plaintiff alleges that McCarey said that she

would "take care of it."  (Am. Compl. ¶ 14; Kim Aff. Ex. C ("Nagel Dep."), at 56.) [3] According

to Plaintiff, McCarey did not state how she would "take care of it," or what actions Plaintiff

would need to take to obtain an extension of her leave.  (*Id.*)  McCarey, however, testified that

she told Plaintiff she needed to fill out paperwork to be eligible for leave, (Kim Aff. Ex. E

("McCarey Dep."), at 21), and that she would not have told Plaintiff she would be entitled to or

approved for an extended leave of absence.  (McCarey Aff. ¶ 16.)

Around the same time, McCarey – who was responsible for reviewing and approving

leave requests – forwarded Plaintiff the FMLA leave paperwork.  (P's Counter 56.1 ¶ 15; D's

56.1 ¶ 15.)  Plaintiff submitted the FMLA leave request form along with a Certification of Health

Care Provider in which Plaintiff's doctor indicated that she should be out of the office for "6

weeks post partum."  (P's Counter 56.1 ¶ 24; P's Aff. Ex. I.) [4]

McCarey used the guidelines found in the Orange County Rules for the Classified

Service (the "Rules"), as well as the County Guidelines for the Family and Medical Leave Act,

to calculate Plaintiff's FMLA leave.  (*See* McCarey Aff. ¶ 2; *Id.* Ex. A; McCarey Reply Aff

¶ 12.) [5]  Based on these guidelines, McCarey calculated that Plaintiff's FMLA leave would be

exhausted on January 22, 2009.  (P's Counter 56.1 ¶ 20; D's 56.1 ¶ 20.)  On December 5, 2008,

---

[3] "Kim Aff." refers to the August 2, 2012 Affidavit of Hyun Chin Kim in Support of Defendant's Motion for Summary Judgment.  (Doc. 32.)

[4] "P's Aff." refers to the August 30, 2012 Affidavit of Plaintiff Erin Nagel in Support of Opposition to Summary Judgment.  (Doc. 38.)

[5] "McCarey Reply Aff." refers to the September 13, 2012 Reply Affidavit of Donna McCarey in Support of Defendant's Motion to Dismiss.  (Doc. 45.)

McCarey approved Plaintiff's request for leave and forwarded to Plaintiff the County-approved FMLA leave form indicating November 12, 2008 to January 22, 2009 as the dates of her leave, as well as a memorandum with further information.  (P's Counter 56.1 ¶ 21; D's 56.1 ¶ 21; Fogg Aff. Ex. B.)[6]  The December 5 memorandum instructed Plaintiff that, "[i]f it is necessary to extend your leave beyond the ending date of this approved leave, you must submit a new 'Request for Leave' form and 'Certification of Health Care Provider' form (for medical leaves) to your Department Head."  (Fogg Aff. Ex. B.)  Plaintiff never contacted anyone at the County concerning the paperwork, the date her leave expired, or when she would be returning to work, (P's Counter 56.1 ¶ 25; D's 56.1 ¶ 25), as Plaintiff claims it was her understanding that she had submitted all the paperwork required for an extended leave, (P's Counter 56.1 ¶ 24).

On January 15, 2009, Plaintiff submitted to the County a form signed by her doctor entitled Supplementary Report of Claim-Statutory Disability Benefits.  (*Id.*)  The form – which apparently related to Plaintiff's claim to an insurance company for disability benefits, not to leave from Plaintiff's job – stated that Plaintiff was due to give birth on January 16, 2009, and that she would be able to return to work on March 16, 2009.  (P's Counter 56.1 ¶¶ 13, 27; P's Aff. Ex. I.)  On January 22, 2009, Plaintiff's FMLA leave ended.  (P's Counter 56.1 ¶ 20; D's 56.1 ¶ 20.)  Plaintiff did not return to work, nor did she communicate with the County concerning the end of her leave or her return to work.  (P's Counter 56.1 ¶ 26; D's 56.1 ¶¶ 26-27.)  On or around January 28, 2009, Fogg wrote a letter to Plaintiff and told her that she was being terminated, effective February 4, 2009.  (P's Counter 56.1 ¶ 29; D's 56.1 ¶ 29.)

---

[6] "Fogg Aff." refers to the April 29, 2011 Affidavit of Harry Fogg in Support of Defendant's Motion for Summary Judgment.  (Doc. 33.)

## II.    DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

B. FMLA Retaliation Claims

FMLA retaliation claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[7] To establish a *prima facie* claim for FMLA retaliation, a Plaintiff must demonstrate that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537-38 (S.D.N.Y. 2009). If the plaintiff establishes a *prima facie* case, there is a presumption of retaliation, and the

---

[7] While the Second Circuit has never "definitively applied the burden-shifting framework" to FMLA retaliation claims, *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012), it is common practice to do so. *See Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623 (2d Cir. 2012) (summary order); *Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009) (summary order); *Potenza v. City of N.Y.*, 365 F.3d 165, 167-68 (2d. Cir. 2004) (per curiam). In any event, whether the *McDonnell Douglas* standard definitively applies is not relevant here, where Plaintiff has failed to make out a *prima facie* case of FMLA retaliation.

burden shifts to the defendant to provide a legitimate nondiscriminatory reason for the termination. *See Debell v. Maimonides Med. Ctr.*, No. 09-CV-3491, 2011 WL 4710818, at *8 n.4 (E.D.N.Y. Sept. 30, 2011). If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered legitimate reason for her termination was pretextual. *See id.* "To defeat summary judgment, plaintiff need not show that defendant's proffered reason was false or played no role in the decision to terminate him, but only that it was not the only reason, and that h[er] filing for FMLA leave was at least one motivating factor." *Id.* at *10.

Plaintiff alleges that Defendant improperly refused to grant her an extended leave of absence, which was routinely granted to other employees, in retaliation for Plaintiff having taken FMLA leave. (Am. Compl. ¶¶ 22, 25.) It is undisputed that when Plaintiff's FMLA leave expired and she failed to return to work, she was terminated. The parties dispute only whether Plaintiff was qualified for her position and whether the denial of a leave of absence and subsequent termination occurred under circumstances giving rise to an inference of retaliatory intent.

### 1. *Whether Plaintiff Was Qualified*

A plaintiff is qualified for her position if she can show that "[s]he possesses the basic skills necessary for performance of the job," *Cooper v. N.Y. State Nurses Ass'n*, 847 F. Supp. 2d 437, 448 (E.D.N.Y. 2012) (internal quotation marks and alteration omitted), and thus it is unusual for a plaintiff to fail to meet this standard, *Donnelly*, 691 F.3d at 147. Whether a plaintiff is qualified "must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-

retaliatory basis for its decision." *Id.* (internal quotation marks and alteration omitted). Once the FMLA leave expires, however, if the employee is unable to "perform an essential function of the position" because of "the continuation of a serious health condition," she is not entitled to restoration of her position. *See Reilly*, 620 F. Supp. 2d at 534. Thus, an employee is not qualified for her position if she cannot return for work when her FMLA leave is exhausted. *See Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 433-34 (S.D.N.Y. 2004).

Plaintiff concedes that she was not qualified to return to work upon the expiration of her FMLA leave, absent a leave of absence. (Am. Compl. ¶ 23.) She contends however, that Defendant improperly denied her request for a leave of absence in retaliation for her use of her FMLA leave. (*Id.* at ¶ 22.) Accordingly, the threshold question is whether, pursuant to Defendant's policies,[8] Plaintiff was entitled to a leave of absence after her FMLA leave expired.

> a. Request for Leave

As a civil service employee, Plaintiff's employment is governed by Orange County's collective bargaining agreement ("CBA") with the Civil Service Employees Association ("CSEA") and the New York State Civil Service Law. Pursuant to the CBA, to request a leave of absence, an employee must submit a written request stating the reason and the duration. (McCarey Aff. Ex. L, at Art. 13 ¶ 1.) As discussed above, Plaintiff alleges that she called McCarey on November 12, 2008 to discuss the possibility of taking a leave of absence after the expiration of her FMLA leave. (P's Counter 56.1 ¶ 13.) On November 18, 2008, Plaintiff

---

[8] Whether an employee is entitled to benefits during her FMLA leave is determined by the employer's policies. *See* 29 C.F.R. § 825.209(h) ("An employee's entitlement to benefits other than group health benefits during a period of FMLA leave (*e.g.*, holiday pay) is to be determined by the employer's established policy for providing such benefits when the employee is on other forms of leave (paid or unpaid, as appropriate).").

submitted a Request for Leave form, which indicated her paid leave would run from November 12, 2008 to November 17, 2008, and her unpaid leave would begin on November 18, 2008. (*Id.* ¶ 16; P's Aff. Ex. H.) Plaintiff did not list a date as to when her unpaid leave would expire. (P's Aff. ¶ 17; *id.* Ex. H.) Plaintiff contends that one Request for Leave form was sufficient for both the FMLA leave and a leave of absence, as it was her understanding that McCarey would "take care of" procuring Plaintiff additional leave. (P's Counter 56.1 ¶ 16; P's Aff. ¶ 18.) The December 5, 2008 memorandum that Defendant sent Plaintiff indicated clearly that Defendant was only approving her request for FMLA leave, her leave would expire on January 22, 2009, and additional paperwork would be required to extend her leave past the end date. (Fogg Aff. Ex. B.) Plaintiff contends that she did not submit more paperwork or call Defendant to discuss the end date because she believed, apparently based on her November conversation with McCarey, that McCarey was handling it. (P's Aff. ¶ 18).

While I do not see how Plaintiff could convince a jury that she reasonably believed she did not have to return to work on January 22, 2009, and was under no obligation to do anything further to extend her leave beyond that date, I will assume for the sake of argument that Plaintiff properly requested an extended leave of absence.

b. Probationary or Permanent Employee

Defendant contends that any request for a leave of absence would have been denied because Plaintiff was a probationary employee at the time she took FMLA leave, and only permanent employees are eligible for a leave of absence. (D's Mem. 8.)[9]

---

[9] "D's Mem." refers to the Memorandum of Law of Defendant. (Doc. 35.)

In her opposition, Plaintiff asserts that Defendant improperly categorized Plaintiff as a probationary employee in retaliation for taking her FMLA leave.  (P's Mem. 1, 6.)[10] Specifically, Plaintiff argues that Defendant did not count her days on FMLA leave toward the completion of her probationary period, and that that in itself is an act of retaliation.  (*Id.* at 5-6.) Plaintiff raises this theory of liability for the first time in her opposition.  It is well-settled that a party may not raise new claims or theories of liability for the first time in opposition to summary judgment.  *See Casseus v. Verizon N.Y., Inc.*, No. 08-CV-4119, 2010 WL 2736935, at *14 (E.D.N.Y. July 9, 2010) ("[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment."); *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) (refusing to consider specific instance of discrimination first alleged in opposition to motion for summary judgment but not made in complaint or EEOC charge); *Heletsi v. Lufthansa German Airlines, Inc.*, No. 99-CV-4793, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) ("A party cannot amend their [*sic*] complaint simply by alleging new facts and theories in their [*sic*] memoranda opposing summary judgment."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.") (citation omitted).  Accordingly, Plaintiff's assertion that Defendant retaliated against her by improperly extending her probationary period, raised for the first time in opposition to summary judgment, cannot defeat summary judgment.

---

[10] "P's Mem." refers to Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Summary Judgment.  (Doc. 41.)

In any event, the theory is unavailing.  The Rules govern how all leave, including but not limited to FMLA leave, affects the method for calculating an employee's probationary period. (D's Reply 5.)[11]  Rule XV(3) states that, "[a]ny [] periods of [authorized or unauthorized] absence in excess of an aggregate of ten work days shall not be counted as time served in the probationary term."  (McCarey Aff. Ex. I, at Rule XV(3).)  Additionally, "[t]he minimum and maximum periods of the probationary term of any employee shall be extended by the number of work days of his absence, which, pursuant to this section, are not considered as time served in the probationary term."  (*Id*.)

Plaintiff began working at the Department on January 2, 2008, and because she was subject to a probationary period of fifty-two weeks, her probation was due to expire on December 31, 2008.  Plaintiff, however, used sixty-four days of leave time prior to December 31, 2008, and used an additional fourteen days of leave time in January 2009, (McCarey Aff. ¶ 36; *id.* Ex. C), and therefore her probationary period was extended seventy-eight days from December 31, 2008, (*id.* ¶ 36; McCarey Reply Aff. Ex. A)  Accordingly, Plaintiff's probationary period expired on April 24, 2009, after she requested a leave of absence.  (McCarey Aff. ¶ 36.)

Defendant's policy of excluding an employee's absences from the probationary period seems prudent, as it reasonable to think that if an employee is absent for a significant portion of a period during which she is undergoing review, the employer would need to extend the length of the probation so that it has the full period in which to determine whether the keep the employee on.  Indeed, Defendant's policy of counting absences in excess of ten days against the

---

[11] "D's Reply" refers to Defendant's Reply Memorandum of Law.  (Doc 47.)

probationary period (which, as noted, applies to any leave, not just FMLA leave) comports with the FMLA, which states that:

> Nothing in this section shall be construed to entitle any restored employee to:
>
> (a) the accrual of any seniority or employment benefits during any period of leave; or
> (b) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

29 U.S.C. § 2614(a)(3). Certainly nothing in the FMLA requires an employer, for seniority or experience purposes, to treat an employee as if she had been present when in fact she was absent. And there is not an iota of evidence suggesting that Defendant's not crediting Plaintiff with leave days beyond the first ten resulted from anything other than a routine application of standard policy, let alone that it was influenced by any retaliatory motive. Thus, Plaintiff cannot successfully allege that her probationary period was improperly extended.

In her Amended Complaint, however, Plaintiff alleges that she was a permanent employee, and therefore should have been eligible for a leave of absence. (*See* Am. Compl. ¶ 15; P's Counter 56.1 ¶ 2.) Both parties agree that the Rules govern an employee's status, though they dispute how those Rules should be applied to Plaintiff. (P's Mem. 6; McCarey Aff. ¶ 41.) Under the Rules, an employee's probationary status depends on whether the employee was appointed off an open competitive list, transferred, or promoted. (McCarey Aff, Ex. I, at Rule XV.) Defendant contends that Plaintiff was appointed off an open competitive list, (D's 56.1 ¶¶ 4-7), but Plaintiff asserts that she was transferred between departments, (P's Counter 56.1 ¶¶ 4-7).

The Rules define a transfer as "the change, *without further examination*, of a permanent employee from one position to another similar position under the jurisdiction of another appointing authority, or to a position in a different title under the jurisdiction of the same appointing authority." (McCarey Aff. Ex. I, at Rule I(7)) (emphasis added). The only evidence of record supports Defendant's position.

Plaintiff took an open competitive examination to be hired as a clerk at the Department, (P's Aff. ¶¶ 4, 8; D's 56.1 ¶ 4), and was appointed to the position off the eligible list that resulted from the examination, (P's Aff. ¶ 8; D's 56.1 ¶ 5).[12]  As an individual appointed off an open competitive list, Plaintiff was subject to a probationary term of not less than eight or more than fifty-two weeks. (McCarey Aff. Ex. I, at Rule XV.)  The probationary period terminates when the employee receives a letter indicating she has become a permanent employee or the employee completes the entire fifty-two weeks of probation. (*Id.*)  There is no evidence in the record to suggest that Plaintiff received written notice that she had become a permanent employee, and thus she was subject to a fifty-two week probationary period.  As Plaintiff's probationary period was extended to April 24, 2009 because of leave days taken, (McCarey Aff. ¶¶ 35-36), Plaintiff was a probationary employee when she was terminated on February 4, 2009, (*Id.* at ¶ 37).

### c.   Defendant's Leave Policy

Plaintiff's status as a probationary employee arguably is not dispositive of whether she was properly denied a leave of absence if, as Plaintiff claimed in her Amended Complaint, leaves of absence were generally available to all employees. (Am. Compl. ¶ 25.)  Defendant contends

---

[12] Furthermore, Plaintiff resigned her position as a DMV clerk to accept her position at the Department. (D's 56.1 ¶ 3.)

that it was the Department's policy to grant leaves of absences only to permanent employees. Although Plaintiff appears to have abandoned this contention, I address it in an excess of caution.

Article 13 of the CBA states, in relevant part,

> The Employer may grant a leave of absence without pay to [a] *permanent employee* for a period not to exceed one (1) year upon receipt of written request stating the reasons and duration.

(McCarey Aff. Ex. L, at Art. 13 ¶ 1) (emphasis added). The Rules, however, do not limit leaves of absence to permanent employees, and state only that "[a] leave of absence without pay . . . may be granted to *an employee* by an appointing officer." (*Id.* Ex. I, at Rule XXII(1).) Notwithstanding the conflicting provisions, Defendant maintains, and the record reflects, that as a matter of Defendant's policy, only permanent employees were granted leaves of absence.

Plaintiff offers no evidence to support her assertion that leaves of absence were routinely provided to all employees. (Am. Compl. ¶ 25; P's Aff. ¶ 13.) Indeed, the record is devoid of any evidence that Defendant ever granted a leave of absence to a probationary employee. Defendant, on the other hand, has submitted four examples of leave requests that were denied for the stated reason that the employee was probationary. (McCarey Aff. Ex. N.) Furthermore, the Department's Leave Request Worksheet indicates that an employee is eligible for a leave of absence only if she is a permanent employee. (*Id.* Ex. C.) Thus, regardless of whether the CBA trumps the Rules as a legal matter, it plainly was Defendant's interpretation and practice that

14

only permanent employees were eligible for leave.  Implementing that practice in Plaintiff's case, as in other cases, gives rise to no inference of retaliatory intent.[13]

As Plaintiff cannot demonstrate that she was eligible to receive a leave of absence, she was required to return to work on January 22, 2009, when her FMLA leave expired, and she has conceded that she was unable to return to work on that date.  (Am. Compl. ¶ 23; *see* P's Counter 56.1 ¶ 24.) Thus, she cannot show that she was qualified for her position, and therefore she fails to allege a *prima facie* case of FMLA retaliation.  *See Reilly*, 620 F. Supp. 2d at 534; 29 C.F.R. § 825.214(b).

Accordingly, Defendant is entitled to summary judgment.

### 2.   *Legitimate, Non-Discriminatory Reason*

If Plaintiff had sufficiently pleaded a *prima facie* case, the burden would shift to Defendant to articulate a legitimate, non-discriminatory basis for its actions.  I address the issue in an abundance of caution.  Defendant proffers such a justification for denying Plaintiff a leave of absence – namely, that as a probationary employee, she was ineligible for one.  Defendant not only articulates such a basis, *Nurse v. Windham Cmty. Mem'l Hosp.*, No. 10-CV-177, 2012 WL 6727620, at *10 (D. Conn. Dec. 28, 2012), but offers sufficient evidence in support of it, including CBA Article 13, the denied leave request forms of other probationary employees, and the Leave Request Worksheet.  Accordingly, Defendant has met its burden of providing a legitimate, non-discriminatory reason for denying Plaintiff leave.  *See Blitzer v. Potter*, No. 03-

---

[13] Further, both Article 13 of the CBA and Rule XXII grant the employer discretion to decide whether an employee shall receive a leave of absence. (McCarey Aff. Ex. L, at Art. 13 ¶ 1; *id.* Ex. I, at Rule XXII(1).)  Thus, even if Plaintiff were a permanent employee, there is no guarantee that she would have received a leave of absence. Defendant has submitted leave requests that were denied for reasons other than the employee having probationary status, such as staffing concerns, to show that these requests were not in fact granted as a routine matter.  (*Id.* Ex. N.)

CV-6124, 2005 WL 1107064, at *11 (S.D.N.Y. May 6, 2005) (plaintiff being ineligible was a legitimate, non-discriminatory reason for not hiring plaintiff); *Smith v. Ward Leonard Elec. Co.*, No. 00-CV-3703, 2004 WL 1661098, at *5 (S.D.N.Y. July 23, 2004) (plaintiff being ineligible was a legitimate, non-discriminatory reason for failure to promote plaintiff).

### 3. Pretext

Again, because Plaintiff did not sufficiently plead a *prima facie* case of retaliation, it is only out of an abundance of caution that I address whether Plaintiff could adduce admissible evidence that would permit a reasonable jury to find that Defendant's non-discriminatory basis for its adverse action was in fact a pretext for unlawful retaliation. *See Debell*, 2011 WL 4710818, at *8 n.4. "To defeat a motion for summary judgment, a plaintiff must do more than simply assert that the defendant's stated reason for [retaliating against] [her] was false; [s]he must also demonstrate that the [adverse employment action] was motivated by a discriminatory animus." *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 282 (E.D.N.Y. 1999). Plaintiff has failed to meet this burden.

Defendant argues that Plaintiff is relying only on her own speculation that leaves of absence were routinely granted to all employees, and that Defendant's policy of granting leaves of absence only to permanent employees is amply supported by the record. I agree. The record is devoid of facts suggesting that a probationary employee was ever granted a leave of absence. Moreover, it is undisputed that Defendant has submitted several examples of leave requests that were denied for the stated reason that the requesting employees were probationary, as well as its Leave Request Worksheet that explicitly states its policy to be that only permanent employees were granted leaves of absence. (McCarey Aff. Exs. C, N.) Plaintiff has presented no evidence

16

suggesting that Defendant's stated reason was false, let alone that retaliation was Defendant's actual motive.  Indeed, Plaintiff undermines her asserted retaliation claim by her statement that she believes Defendant terminated her so that the Department could give her job to a different employee – specifically, the daughter of the Deputy County Executive of Orange County. (Nagel Dep. 110 ("My belief as to why I was terminated is so that Molly would not be without a job and they can keep her there to keep on moving her up . . . .").)

In short, there is no evidence of pretext, let alone evidence of an underlying retaliatory motive.  Thus, even if Plaintiff had made out a *prima facie* case, Defendant would be entitled to summary judgment on Plaintiff's retaliation claim.

### III.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending Motion, (Doc. 31), and close the case.

**SO ORDERED.**

Dated:  March 28, 2013
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.